PACIFIC TRIAL ATTORNEYS
A Professional Corporation
Scott J. Ferrell, Bar No. 202091
sferrell@pacifictrialattorneys.com
Victoria C. Knowles, Bar No. 277231
vknowles@pacifictrialattorneys.com
4100 Newport Place Drive, Ste. 800
David W. Reid, Bar No. 267382
dreid@pacifictrialattorneys.com
Newport Beach, CA 92660
Tel: (949) 706-6464
Fax: (949) 706-6469

Attorneys for Plaintiff and the Putative Class

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| MICHAEL VILLAGOMEZ, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>FLEX MARKETING GROUP, LLC, a New York limited liability company, d/b/a BUZZ WORTHY OFFERS and BUZZWORTHYOFFERS,<br><br>Defendant. | Case No. '26CV6263 JO SBC<br><br>**CLASS ACTION COMPLAINT FOR VIOLATION OF CALIFORNIA BUSINESS & PROFESSIONS CODE § 17529.5 (UNLAWFUL COMMERCIAL EMAIL ADVERTISEMENTS)** |

# I. INTRODUCTION & NATURE OF ACTION

1. Defendant's lead-generation operation uses fabricated shipment and gift notices to obtain consumers' attention and personal information. The challenged messages tell a named recipient that an expensive phone is already shipping or that a package of Nike products has already arrived. Those purported benefits do not exist for Plaintiff. The messages supply a false reason to enter a commercial marketing funnel.

2. Plaintiff Michael Villagomez received two unsolicited messages from "Aeon Wise," both using wise@aeonwise.com. One announced "Here You Go, Michael - One iPhone 18 Pro Max Shipping." The other announced "Michael's Nike Pack ARRIVED." Plaintiff had ordered neither item, had not earned either promised benefit, and had not requested these solicitations. The messages used his name and the language of completed arrangements to make lead-generation advertisements appear to be personal fulfillment notices.

3. The object of the scheme was to deliver consumers into Defendant FLEX Marketing Group, LLC's commercial lead-generation operation, conducted under the Buzz Worthy Offers and BuzzworthyOffers names. The purported phone and Nike pack supply the pretext; consumer engagement, information, and purported marketing consent supply the commercial value. Plaintiff alleges Defendant's advertising in and participation in these campaigns, including through authorized publishers, as further described below.

4. The two exemplars reproduced below were sent to Plaintiff's personal address on November 1, 2026, at 1:06:05 a.m. PST and 4:23:19 a.m. PST, respectively. Each message asserts that a specific consumer benefit is already associated with Plaintiff and requires only a shipping or claiming step. Each original advertisement, including its visible header and message content, is reproduced below.

5. No iPhone 18 Pro Max was shipping to Plaintiff under the represented arrangement. No no-cost pack of Nike products had arrived for him or was awaiting his claim. Plaintiff had placed no corresponding order, completed no qualifying reward program, and entered no arrangement entitling him to those particular goods. These are

false representations about existing benefits and fulfillment events, not puffery about an advertiser's products.

6. Plaintiff brings this action under California Business and Professions Code section 17529.5(a)(3), individually and for similarly situated recipients of the documented subject-line campaigns. He seeks the liquidated damages, attorneys' fees, costs, and other relief authorized by law, subject to the statute's applicable limitations. The requested relief addresses the unlawful advertisements themselves; the consent-farm allegations explain their design, purpose, and materiality.

7. Plaintiff never enrolled in Defendant's lead-generation program, never requested these solicitations, never agreed to arbitrate a dispute with Defendant, and never agreed to surrender his right to proceed on a class basis. He specifically denies that Defendant may transform receipt of an advertisement, an examination of its contents, or a technical record associated with his identifying information into assent to an agreement he did not make.

8. The commercial harm extends beyond the first deceptive message. The challenged business model seeks to turn a consumer's response into reusable evidence of supposed permission to market. The mechanism is particularly objectionable because it presents an invented benefit as the reason to engage while treating the consumer's information and purported consent as the asset to be acquired. Federal enforcement actions involving other lead generators document the same general risk.[1]

[1] *See* Complaint for Civil Penalties, Permanent Injunction, Monetary Relief, and Other Relief, *United States v. Fluent, LLC*, No. 9:23-cv-81045 (S.D. Fla. July 17, 2023), https://www.ftc.gov/system/files/ftc_gov/pdf/1923230fluentcomplaintandattachment.pdf; Fed. Trade Comm'n, *FTC, Law Enforcers Nationwide Announce Enforcement Sweep to Stem the Tide of Illegal Telemarketing Calls to U.S. Consumers* (July 18, 2023), https://www.ftc.gov/news-events/news/press-releases/2023/07/ftc-law-enforcers-nationwide-announce-enforcement-sweep-stem-tide-illegal-telemarketing-calls-us (describing allegations that deceptive employment and reward solicitations fed websites that converted consumer information into marketing leads).

## II. THE SPAM BAIT-AND-SWITCH EVIDENCE (TWO EXEMPLAR EMAILS)

9. Both messages identify the sender as Aeon Wise <wise@aeonwise.com> and use individualized aeonwise.com links. The original advertisements are reproduced below. Their subject lines, bodies, calls to action, and commercial links provide the particular message evidence underlying Plaintiff's claim.

*Email Evidence 1 — iPhone Shipping Solicitation*

**From:** Aeon Wise <wise@aeonwise.com>
**Date:** November 1, 2026 at 1:06:05 AM PST
**To:** villagomezmichael32@icloud.com
**Subject:** Here You Go, Michael - One iPhone 18 Pro Max Shipping
**Reply-To:** wise@aeonwise.com

iPhone 18 Pro Max Shipping

Here you go, Michael! You wanted better perks, so we've hooked you up with a brand new iPhone 18 Pro Max! Ensure it gets shipped to the proper address by utilizing the connected instructions!

Go Here for Shipping

AEONWISE

You can choose which communications you want to continue receiving from aeonwise.com.

Review email settings

11180 Hwy 51 S Ste 7 PMB 2005, Atoka, TN 38004
Copyright 2026 aeonwise.com

Email Evidence 2 — Nike Pack Arrival Solicitation

**From:** Aeon Wise <wise@aeonwise.com>
**Date:** November 1, 2026 at 4:23:19 AM PST
**To:** villagomezmichael32@icloud.com
**Subject:** Michael's Nike Pack ARRIVED
**Reply-To:** wise@aeonwise.com

Michael's Nike Pack ARRIVED

Excellent, Michael! Your no cost Pack of Nike Products has just arrived! Just claim it at the attached site to have it sent your way.

**Claim Your Nike Pack**

AEONWISE

You can choose which communications you want to continue receiving from aeonwise.com.

Review email settings

11180 Hwy 51 S Ste 7 PMB 2005, Atoka, TN 38004
Copyright 2026 aeonwise.com

10. On November 1, 2026, at 1:06:05 a.m. PST, "Aeon Wise," using wise@aeonwise.com, sent Plaintiff "Here You Go, Michael - One iPhone 18 Pro Max Shipping." Its body asserted that the sender had "hooked you up with a brand new iPhone 18 Pro Max" and told him to ensure shipment to the proper address by following connected instructions. The call to action was "Go Here for Shipping."

11. The phone solicitation represented a completed allocation and present shipping process for a specific valuable product. Plaintiff had not ordered the phone, earned a phone through Defendant, or arranged for its shipment. The message was false as to the central fact offered to induce his response. A person reading the subject and body together would understand that the remaining task concerned delivery of an existing benefit, rather than enrollment in a marketing program to pursue a possible reward.

12. On November 1, 2026, at 4:23:19 a.m. PST, the same displayed sender and sending address sent "Michael's Nike Pack ARRIVED." The body stated: "Excellent, Michael! Your no cost Pack of Nike Products has just arrived! Just claim it at the attached site to have it sent your way." Its call to action was "Claim Your Nike Pack." Plaintiff had ordered no such pack, had not earned or been allocated it, and was not awaiting the represented arrival.

13. The Nike message personalized the supposed package as "Michael's" and stated that it had already arrived. The body reinforced the completed-event representation and described the pack as "no cost." The deception was the existence and availability of Plaintiff's particular package; a generic chance to pursue a promotional benefit would not make that representation true.

14. Both messages used an apparent fulfillment step to make the response seem routine. The phone required shipping instructions; the Nike pack required a claim so it could be sent. Neither message truthfully disclosed that the represented existing allocation or arrival was fictitious. The complete messages, not merely selected subject-line words, support the material-deception allegation.

15. The messages' principal links begin https://www.aeonwise.com/baCBi9/ for the iPhone solicitation and https://www.aeonwise.com/FUyxFW/ for the Nike solicitation, followed by long individualized encoded paths. The source copies preserve the full URLs. Plaintiff identifies the campaign paths to distinguish the solicitations without mistaking the sender's domain, its Tennessee footer address, or a subsequent forwarding transmission for the identity of the commercial advertiser.

16. The campaigns promote Defendant's Buzz Worthy Offers lead-generation business and were initiated, authorized, procured, or commercially exploited by Defendant through its publisher network. That advertiser-attribution allegation is distinct from the directly observable fact that Aeon Wise appears in the original messages. Plaintiff does not allege that an aeonwise.com address alone establishes common corporate ownership or that FLEX personally operated every server used to deliver the e-mails.

17. The messages' exact wording, visible sending identity, dates, and individualized links permit identification of the challenged campaigns. Reuse of the same sender, footer, recipient personalization, and existing-gift pretext supports the inference of coordinated acquisition templates. The precise publisher agreements, offer destinations, campaign identifiers, approval history, and compensation records are within Defendant's and the relevant publishers' possession.

18. Defendant's public disclosures corroborate the commercial business model alleged here. FLEX describes consumer acquisition, first-party data collection on owned sites, and follow-up e-mail, SMS, and push marketing. Buzzworthyoffers' terms identify a rewards funnel requiring registration, a survey, offer viewing, and completion of specified paid offers or subscriptions. Those are substantial consumer-acquisition requirements, materially different from providing shipping directions for a phone already allocated or claiming a package already arrived.[2]

[2] Buzzworthyoffers & Consumer Concierge, Terms & Conditions § 1 (updated July 2, 2024), https://buzzworthyoffers.co/points-terms-conditions (describing registration, a survey, offer viewing, and completion of specified paid offers or subscriptions as requirements to earn a reward). These public terms describe the operator's advertised program; they are not an agreement Plaintiff alleges he accepted.

19. FLEX's own website describes control over ad creative, messaging, and targeting across the acquisition journey and follow-up channels. Defendant selected, authorized, or procured these acquisition campaigns and commercially benefited from the resulting engagement.[3]

## III. PARTIES

20. Plaintiff Michael Villagomez is a citizen and resident of California residing within this District in the city of Vista, County of San Diego. He owns and uses villagomezmichael32@icloud.com, the address appearing in the reproduced messages. He received, opened, and reviewed the challenged advertisements on his personal device while physically present in California. His address is a California electronic-mail address within Business and Professions Code section 17529.1 because its user is a California resident.

21. Defendant FLEX Marketing Group, LLC ("FLEX" or "Defendant") is a New York limited liability company. Its principal place of business is in New York, New York, and it conducts the relevant lead-generation business under the names Buzz Worthy Offers, BuzzworthyOffers, and Consumer Concierge. Its published corporate mailing address is 1776 Broadway, Floor 23, New York, New York 10019. Buzzworthyoffers uses the contact address 4640 Roosevelt Blvd STE 3 #1446, Philadelphia, Pennsylvania 19124.[4]

22. On information and belief, Defendant uses publishers and other marketing participants to acquire traffic for its lead-generation destinations. As to the challenged solicitations, those participants acted with authority to promote Defendant's offers and funnels, and within that authority caused delivery of the advertisements. Plaintiff alleges Defendant's own advertising, approval, procurement, and commercial exploitation of these campaigns; an affiliate label is not a substitute for that participation.

---

3 FLEX Marketing Group, The FLEX Difference, https://flexmg.com/ (last visited Nov. 3, 2026) (describing control over the acquisition journey, first-party collection on owned sites, and subsequent e-mail, SMS, and push marketing); FLEX Marketing Group, Privacy Policy/Your California Privacy Rights, https://flexmg.com/legal/flex-privacy-policy/ (last visited Nov. 3, 2026) (identifying FLEX Marketing Group, LLC and its 1776 Broadway, Floor 23, New York address).

4 See Flex Marketing Group, LLC, Bizprofile, https://www.bizprofile.net/ny/new-york/flex-marketing-group-llc-2 (last visited Nov. 3, 2026) (reproducing New York Department of State information for entity no. 3145895 and reporting the November 2, 2018 assumed-name filing for Buzz Worthy Offers, assumed-name ID 351701); Buzzworthyoffers & Consumer Concierge, Privacy Policy § III (updated Aug. 1, 2026), https://buzzworthyoffers.co/privacy-policy (identifying both trade names and the Philadelphia contact address). The ownership allegation is made on information and belief from these public disclosures; the cited corporate listing is a reproduction, not a certified state filing.

23. The allegations made on information and belief concern matters principally controlled by Defendant, including campaign authorization, publisher relationships, recipient sourcing, compensation, consent records, and offer routing. The exact message evidence is separately pleaded from the information-and-belief attribution allegations. Public assumed-name information, Defendant's own descriptions of its acquisition business, and Buzzworthyoffers' program disclosures support the identity and business-model allegations; campaign-specific records will identify the respective roles of Defendant and its publishers.

## IV. JURISDICTION AND VENUE

### Class Action Fairness Act Jurisdiction

24. This Court has original subject-matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2), (5)(B), and (6). The proposed Class exceeds 100 members, minimal diversity exists, and the aggregate amount in controversy exceeds $5 million, exclusive of interest and costs. Plaintiff is a California citizen. For purposes of CAFA, Defendant is a citizen of New York, where it is organized and, on information and belief, has its principal place of business. 28 U.S.C. § 1332(d)(10).

25. On information and belief, the proposed Class includes more than 100,000 recipients of the challenged templates during the applicable limitations period. The estimate rests on the alleged mass distribution of the campaigns, their standardized individualized content, and Defendant's publicly described business of consumer acquisition at scale through e-mail and other marketing channels. The two messages are examples of those distributed campaigns, not an allegation that only two individual transmissions occurred. The aggregate amount in controversy exceeds $5 million when legally recoverable liquidated damages across distinct distributions and incidents and statutory attorneys' fees are considered.

26. The amount-in-controversy allegation concerns multiple campaign variants and distributions, not a single mass transmission assumed to yield unlimited damages. The exact campaign totals and number of statutory incidents are within Defendant's records.

Plaintiff alleges the jurisdictional threshold in good faith based on the pleaded scale and repeated campaign activity, while recognizing that the ultimate recovery must comply with the statute.

27. Plaintiff has Article III standing because he personally received and reviewed the unsolicited, materially deceptive commercial messages in his private inbox. They occupied his attention, required him to examine purported fulfillment notices concerning goods associated with him, and interfered with his use and control of personal communications. His injury includes the actual unwanted contact and resulting intrusion and expenditure of attention, not merely a risk of future marketing to someone else. The injury is traceable to the challenged campaigns and redressable by monetary relief.

## V. PERSONAL JURISDICTION

28. This Court has specific personal jurisdiction over Defendant under Federal Rule of Civil Procedure 4(k)(1)(A) and California Code of Civil Procedure section 410.10. Defendant purposefully directs the challenged commercial solicitations into California, exploits California recipients as a market for its lead-generation services, and causes the forum-related conduct from which Plaintiff's claims arise. Plaintiff relies on Defendant's own campaign conduct, including conduct undertaken by publishers acting at its direction or within the scope of their authority, rather than the mere accessibility of a website.

29. Purposeful direction. Defendant deliberately seeks California consumers as a source of traffic, leads, and revenue. On information and belief, it acquires or causes publishers to use recipient lists containing California residents and authorizes distribution of the challenged gift-allocation and shipping campaigns to those recipients. California is an intended market for the acquisition operation, not a place where an otherwise unrelated publication happened to be encountered.

30. The asserted contacts include the actual transmissions to Plaintiff's California-used personal address, repeated use of his name, and links designed to move an identified recipient into the promoted commercial funnel. On information and belief, Defendant's lead and campaign records associate recipients and responses with consumer

profiles and geographic information used to select, value, and attribute leads. That allegation concerns Defendant's commercial use of recipient information; it does not assume that an icloud.com domain by itself reveals California residency.

31. On information and belief, Defendant and the publishers acting for these campaigns knew that the campaigns included California recipients and deliberately continued serving that audience. The inference rests on the alleged sustained distribution to California consumers, the commercial value of identifying and qualifying leads, and the personalized campaign architecture. The specific geographic fields, list-source instructions, and recipient-selection criteria are maintained by Defendant and its campaign participants.

32. Defendant expressly addresses California consumers in its published privacy disclosures, including the collection and use of their data and California-specific rights. Its identified data categories include registration information, geographic and device-related signals, survey responses, and purported marketing-consent records. Those disclosures support the allegation that California is a known consumer market served by Defendant's operation, rather than a forum connected to this suit solely through Plaintiff's unilateral residence.[5]

33. Plaintiff alleges intentional commercial acts: preparing or approving the advertised funnel, procuring its promotion, and causing or authorizing personalized solicitation of the intended consumer audience. The claimed wrong is the materially deceptive method of obtaining traffic. Defendant's use of a publisher or an out-of-state server does not make those choices the unilateral acts of Plaintiff.

34. California connection. Defendant's campaign reaches a California resident at the personal address he uses here, seeks to induce his commercial engagement here, and imposes the alleged unwanted solicitation here. The California nexus therefore includes

---

[5] Buzzworthyoffers & Consumer Concierge, Privacy Policy §§ III, VI, IX (updated Aug. 1, 2026), https://buzzworthyoffers.co/privacy-policy (addressing California residents' data rights and describing collection of registration, device, survey, and purported telemarketing-consent information). Public descriptions of available practices do not establish that every category was collected from Plaintiff; his cause of action here concerns the two materially deceptive commercial e-mails.

Defendant's chosen solicitation and exploitation of a forum market. Plaintiff's domicile alone, without those suit-related acts, is not the asserted basis for jurisdiction.

35. Defendant's nationwide distribution does not negate the California contacts alleged here. Plaintiff relies on Defendant's affirmative exploitation of the California consumer audience and the challenged transmissions into that audience.

36. Relatedness. Plaintiff's section 17529.5 claim arises directly from the California-directed solicitations. The advertisements constituting the alleged statutory violations are the same advertisements establishing the forum connection. Their receipt and review in California are part of the events challenged, rather than collateral consequences of a transaction completed entirely elsewhere.

37. The proposed Class is confined to recipients at California electronic-mail addresses and to the identified campaign templates. The class claim likewise concerns Defendant's exploitation of the California recipient market. Plaintiff does not invoke California jurisdiction to recover for unrelated foreign campaigns having no California connection.

38. Reasonableness. California has a substantial interest in enforcing its rules against materially deceptive commercial e-mail sent to its residents. Plaintiff has a substantial interest in obtaining relief where he lives and received the messages. Defendant deliberately conducts an electronic consumer-acquisition business serving that market, and litigating the legality of those solicitations here is reasonably foreseeable.

39. The material evidence is predominantly electronic, including message templates, transmission logs, campaign-routing and offer records, publisher agreements, and purported consent records. Such materials can be produced without relocating Defendant's business. Any burden associated with its New York location must be weighed against its deliberate pursuit of California consumers and California's interest in the challenged solicitations.

40. Accordingly, Defendant's forum-related choices, the direct relationship between those choices and the claim, and the interests of the parties and the forum make

the exercise of specific jurisdiction consistent with fair play and substantial justice. Should Defendant contest the facts uniquely within its possession, Plaintiff requests appropriately focused jurisdictional discovery into these identified campaign and recipient-selection matters.

## VI. VENUE

41. Venue is proper under 28 U.S.C. § 1391(b)(2). Plaintiff resides in this District, received and reviewed the challenged solicitations here, and experienced the resulting interference with his personal inbox here. A substantial part of the events giving rise to the claim occurred in this District even if campaign servers, publishers, or Defendant's personnel were located elsewhere.

## VII. FACTUAL ALLEGATIONS

42. Section 17529.5(a)(3) prohibits advertising in a commercial e-mail sent from California or to a California electronic-mail address when the subject line is known to be likely to mislead a recipient, acting reasonably under the circumstances, about a material fact concerning the message's contents or subject matter. Plaintiff challenges fabricated product-allocation, shipment, and arrival notices meeting that standard; he does not seek liability merely because an advertisement was unsolicited.

43. Defendant uses the challenged e-mails to acquire visitors and leads for a commercial consent-harvesting operation. A "consent farm," as used here, is a lead-generation funnel that induces consumers to provide information or take an ostensibly ministerial action, then characterizes the interaction as permission for marketing by the operator or its partners. A consumer investigating an already allocated phone or an arrived package is not necessarily shopping for marketing offers or volunteering to become a marketable lead.

44. The challenged mechanism has three connected stages. First, the subject line and body assert that a particular product already belongs to the recipient or is already in the fulfillment process. Second, the message presents a shipping instruction or claiming step as the means of obtaining that supposedly existing item. Third, on information and

belief, the promoted operation seeks identifying information and commercially attributable engagement that can be monetized as leads or purported marketing permissions. The false fulfillment premise supplies attention that an accurately described marketing solicitation would not obtain.

45. The mechanism exploits an imbalance of information. The operator knows that it is acquiring a marketable lead, while the consumer is told that a specific phone is shipping or a no-cost Nike pack has arrived. Personalization and apparent familiarity make an unrelated commercial solicitation look like the final step of an existing arrangement. The FTC has identified deceptive lead-generation designs and obscured data-use disclosures as threats to consumer choice.[6]

46. The misconduct alleged here deliberately exploits expectations of an existing benefit. A business may truthfully invite a consumer to participate in a rewards program and disclose what participation requires. It cannot truthfully announce that a phone is shipping or that a consumer's package has arrived when no such allocation or fulfillment event exists for that consumer. The fabricated completed event is what makes these solicitations materially deceptive.

47. Plaintiff never signed up to receive Defendant's advertising, had no preexisting business relationship with Defendant, and never gave it direct consent to send these messages. He did not ask Defendant or Aeon Wise to provide an iPhone, allocate Nike products, or process shipping for either. His receipt of messages using his name does not establish that he supplied that name to Defendant or agreed to participate in its rewards or lead-generation program.

48. The FTC has pursued other lead generators for allegedly using supposed rewards, job opportunities, or requested services to procure broad marketing permissions

[6] Fed. Trade Comm'n, *Bringing Dark Patterns to Light* 17–18 (Sept. 2022), https://www.ftc.gov/system/files/ftc_gov/pdf/P214800%20Dark%20Patterns%20Report%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%20-%20FINAL.pdf (describing deceptive lead generators' use of false affiliations and misleading collection purposes to obtain information for sale; explaining that privacy choices should be presented when consumers decide how their data will be used).

and then sell consumer information. That history is relevant context for the commercial incentives alleged here.

49. Defendant's economic incentive is to maximize commercially attributable engagement and the volume of marketable leads or permissions. A transactional subject line can advance both ends by drawing attention from consumers who would otherwise ignore an accurately labeled marketing solicitation. The same incentive explains the messages' repeated personalization and emphasis on a benefit supposedly already associated with the recipient.

50. The deception is not cured by the possibility that a real advertiser might offer a genuine product or that a consumer completing a reward program might ultimately receive something of value. Plaintiff challenges the false representation that his particular iPhone allocation, shipment, or Nike-pack arrival already existed. A future opportunity subject to additional requirements does not substantiate a fabricated completed event.

51. Plaintiff specifically denies signing any contract with Defendant, opening an account with it, or enrolling in the advertised lead-generation program. He never authorized another person, publisher, lead broker, or marketing partner to enroll him, accept online terms for him, or surrender his procedural rights. An address or name appearing in a purchased list does not establish those acts.

52. Plaintiff never agreed to an arbitration provision, delegation clause, class-action waiver, representative-action waiver, or forum-selection clause with Defendant. He did not manifest assent to any such provision by signature, checkbox, affirmative acceptance of disclosed contractual terms, or authorization of an agent. These denials concern the existence of an agreement, independently of any contention about whether a formed agreement would be enforceable.

53. Plaintiff had no actual knowledge of supposed arbitration or class-waiver terms before the challenged solicitations. He was not presented with terms he accepted that identified Defendant as his contracting counterparty and stated that his conduct would bind him to arbitration or waive class rights. Merely receiving or reading an e-mail, or following

a promotional instruction to examine a supposed existing benefit, does not supply missing contractual formation.

54. To the extent Defendant later produces a TrustedForm certificate, session replay, lead record, IP address, timestamp, checkbox entry, or other electronic artifact, Plaintiff denies that the mere existence of that artifact establishes his assent. A record must be authenticated and connected to his actual conduct, the actual screen and terms presented at the relevant time, and an action that objectively manifested agreement. A matching identifier alone cannot establish all of those facts.

55. Plaintiff does not allege that every electronic consent certificate is inherently false or that reliable electronic records can never prove a contract. He alleges that he made no agreement with Defendant and that a technical record cannot substitute for the notice and assent needed to create one. Nor can terms introduced after the challenged transmission retrospectively authorize a false subject line already sent.

56. Any contention that Plaintiff's interaction with a promotional message established consent to marketing presents a separate question from whether he agreed to arbitrate or waive a class proceeding. Permission for one purpose, even if proven, does not automatically establish agreement to unrelated terms. Plaintiff denies providing either permission here.

57. The allegation of fraudulent procurement is also distinct from the formation denial. Defendant's false transactional premise concerns why the consumer is being contacted and what the next step will accomplish. Plaintiff challenges that predicate deception. He does not rely solely on a generalized assertion that every contract induced by any misrepresentation automatically fails to exist.

58. The Aeon Wise identity and aeonwise.com domain matter as context and as evidence identifying the publisher-facing campaign. The claim concerns subject lines and bodies presenting an existing personal benefit and a fulfillment step, rather than openly advertising a lead-generation program. Plaintiff does not plead domain opacity alone as a violation of section 17529.5.

59. Defendant knew, or those designing and authorizing the campaigns knew, whether an actual phone allocation, shipping process, or Nike package existed for the addressed consumer. On information and belief, standardized templates were populated with recipient names without corresponding fulfillment records or earned benefits. Repetition of the same personalized-existing-gift device for two different branded products supports the inference of deliberate campaign design rather than an isolated mistake.

60. The phone message describes a brand-new product as already arranged and in shipping, while the Nike message describes a no-cost product pack as already arrived. Neither identifies an actual order number, an earned-reward qualification completed by Plaintiff, or an existing transaction he had initiated. The asserted completed benefit was selected as the hook for immediate action even though Plaintiff had done nothing to obtain it.

61. The false facts are pleaded with particularity: who received the messages, the visible sending identities and addresses, the dates, the exact documented subject lines, the transaction represented, why it was false, and the promoted commercial objective. Knowledge and the internal allocation of campaign responsibility are alleged on information and belief because Defendant and its vendors control those records.

62. Plaintiff personally experienced the unwanted intrusion into his inbox and spent attention reviewing messages framed as product-fulfillment matters concerning him. He does not allege that he completed a purchase, supplied additional information, or received downstream robocalls merely because those events can occur in a lead-generation funnel. The concrete contact alleged here is the actual receipt and review of the two deceptive commercial advertisements.

63. CAN-SPAM does not displace the pleaded theory merely because the advertisements traveled by e-mail. Plaintiff seeks relief for material falsity and deception of the kind expressly preserved by 15 U.S.C. § 7707(b)(1).

## VIII. CLASS ACTION ALLEGATIONS

64. Plaintiff brings this action under Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of himself and the proposed California E-mail Class defined below.

65. California E-mail Class: All natural persons who, during the applicable limitations period through the date of class certification, received at a California electronic-mail address a commercial e-mail advertisement in which Defendant advertised its lead-generation operation and that used either of the following subject lines, allowing for substitution of the recipient's name and immaterial punctuation or capitalization: "Here You Go, [name] - One iPhone 18 Pro Max Shipping"; or "[name]'s Nike Pack ARRIVED."

66. Numerosity. On information and belief, the Class includes more than 100,000 persons and is sufficiently numerous that joinder is impracticable. The challenged messages are standardized, personalized mass advertisements rather than individual correspondence. The precise number and identities are ascertainable from the campaign, suppression, publisher, transmission, and recipient records held by Defendant and its service providers.

- Commonality. Common questions include whether Defendant advertised in and commercially benefited from the challenged campaigns; which publisher relationships and message templates were authorized or used; what the messages represented about an allocated iPhone, its shipment, and a no-cost Nike pack; and whether recipients actually had the represented benefits and fulfillment events.
- Other common questions include whether the subject lines were likely to mislead reasonable recipients about material facts; what Defendant knew concerning the campaign representations; whether any direct-consent records are authentic and sufficient; and whether standardized funnel or website terms created an enforceable agreement or class waiver.
- Additional common questions concern Defendant's relationship with its publishers, control over campaign content and destinations, recordkeeping, compliance

practices, the proper identification of statutory incidents, any claimed due-care reduction, and the measure of authorized relief.

- Predominance. The central questions turn on common campaign templates, offer substantiation, transmission and attribution records, and Defendant's standardized practices. Variations in a recipient's name or the time of transmission do not alter the central representation. Plaintiff does not ask the Court to infer liability from a wholly different campaign that merely shares Defendant's name.

67. Typicality. Plaintiff received both subject-line variants identified in the Class definition. His claim arises from the same alleged commercial practice, statutory duty, and materially misleading existing-benefit representations challenged for the Class. Differences in the number of advertisements received or the resulting damages do not change the common course of conduct.

68. Adequacy. Plaintiff will fairly and adequately protect the Class, has no interests antagonistic to absent members, and has retained Pacific Trial Attorneys, experienced counsel in consumer and digital-privacy litigation. Plaintiff denies entering an arbitration agreement or class waiver with Defendant and will contest any attempt to impose one without proof of formation.

69. Superiority. Individual litigation would require recipients to obtain campaign, publisher, and consent records controlled by a commercial enterprise to recover comparatively modest statutory amounts. A single proceeding permits consistent adjudication of the standardized deception and defenses. Class treatment can use campaign-specific subclasses or other case-management measures if differences among the documented subject lines require them.

70. Excluded from the Class are Defendant and entities it controls; its officers and directors; the assigned judicial officer and that officer's immediate family and staff; and Class Counsel and their employees. Class membership is determined by receipt of the objectively identified campaign messages at a California electronic-mail address, rather than by a recipient's subjective decision to sue.

71. Class membership and the number of challenged transmissions can be evaluated through recipient-address records, copies of messages, campaign identifiers, publisher transmission reports, and records identifying California users. Common proof can also determine the templates used, advertised destinations, substantiation for the asserted transactions, and standardized consent procedures.

72. If necessary, Plaintiff seeks campaign-specific subclasses corresponding to the two subject-line variants, with common questions concerning each template resolved together. The definition permits recipients to be identified from objective message and address records without first adjudicating ultimate liability. The Court may refine the definition to conform to the evidence.

## IX. CAUSE OF ACTION

Violation of California Business and Professions Code § 17529.5(a)(3)

73. Plaintiff incorporates the preceding allegations as though fully set forth here. This cause of action seeks recovery for the documented, materially misleading subject-line campaigns identified above.

74. Defendant advertised in the challenged messages by using them to promote and obtain traffic and leads for its commercial acquisition operation. On information and belief, it initiated, authorized, procured, or caused distribution through publishers or marketing agents, selected or approved the promoted destinations, and derived commercial value from the resulting traffic or leads. Its liability is alleged as an advertiser participating in the solicitation, not simply as an entity whose name appeared somewhere on the internet.

75. The messages were commercial e-mail advertisements within Business and Professions Code section 17529.1(c). Their primary commercial purpose was to promote Defendant's lead-generation and marketing operation and the reward, gift, product, or other commercial offers available through the promoted funnel. They were not truthful notices servicing an existing product order or earned reward between Plaintiff and Defendant.

76. The two identified subject lines violated section 17529.5(a)(3) because they were known to be likely to mislead a reasonable recipient about material facts concerning the contents or subject matter of the messages:

- "Here You Go, Michael - One iPhone 18 Pro Max Shipping" represented an existing allocation and shipment of a phone for Plaintiff. The body reinforced that Defendant or its publisher had already arranged the phone and required only shipping directions. No such allocation or shipment existed for Plaintiff; and
- "Michael's Nike Pack ARRIVED" represented a personal package already arrived and ready to claim. The body reinforced that a "no cost Pack of Nike Products" had "just arrived" and needed only to be claimed for delivery. No such pack had been allocated to or arrived for Plaintiff.

77. These representations were material because the supposed existence and availability of particular valuable goods supplied the reason to open and act on each message. Plaintiff challenges the fabricated predicate benefit and fulfillment event, not simply an omitted minor condition. Neither message disclosed that its personalized assertion of an existing item was fictitious. The subject lines remained materially deceptive when considered together with the complete bodies and calls to action.

78. Defendant knew the representations would likely mislead reasonable recipients because, on information and belief, the acquisition campaigns used completed-benefit and fulfillment language without corresponding consumer orders, earned rewards, or shipping records. Their commercial objective was entry into a marketing funnel under that false premise. The two subject-line variants reflected recurring campaign design rather than typographical or delivery errors.

79. Plaintiff and Class members received unsolicited commercial advertisements within the statute's private-remedy provisions. Plaintiff had not supplied direct consent to these solicitations or entered a preexisting business relationship that authorized them. Any claimed consent defense must be assessed against the actual recipient, sender, scope, and

evidence of authorization, not presumed from a message's assertion that the recipient is a registered member.

80. On information and belief, Defendant did not establish and implement with due care practices and procedures reasonably designed to prevent the challenged unlawful advertisements. The recurring use of invented transaction notices across separate campaign themes supports that allegation. A generic prohibition on spam in a publisher contract, standing alone, would not establish that Defendant actually implemented effective preventive procedures with due care.

81. Plaintiff's claim does not depend on proof that he purchased an advertised product or surrendered additional information after opening the messages. It challenges Defendant's advertising in materially misleading subject-line campaigns sent to his California electronic-mail address, with the actual unwanted contact and interference alleged above.

82. Plaintiff and Class members are entitled to the relief authorized by section 17529.5(b), including liquidated damages of $1,000 for each proven unlawful unsolicited commercial e-mail, subject to the applicable per-incident limits and other statutory requirements, together with reasonable attorneys' fees and costs. Plaintiff does not request duplicative recovery for the same message.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, prays for a judgment against Defendant as follows:

a. An order certifying the California E-mail Class under Federal Rule of Civil Procedure 23, appointing Plaintiff as Class Representative, and appointing Pacific Trial Attorneys as Class Counsel;

b. Liquidated damages under California Business and Professions Code section 17529.5(b)(1)(A)(ii) for Plaintiff and each Class member for each proven unlawful unsolicited commercial e-mail, subject to applicable statutory limits;

c. Appropriate injunctive relief against continued use of the challenged materially misleading subject lines, to the extent authorized by law and supported by the standing established in this action;

d. Reasonable attorneys' fees and costs under California Business and Professions Code section 17529.5(b)(1)(C);

e. Prejudgment and postjudgment interest to the extent allowed by law; and

f. Such other and further relief as the Court deems just and proper.

Dated: November 3, 2026

PACIFIC TRIAL ATTORNEYS, APC

By: *_/s/ Scott J. Ferrell_*
Scott J. Ferrell
Attorneys for Plaintiff